# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-KA-00429-COA

**JAMES E. MURPHY**                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                               **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 01/18/2000 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WAYNE DOWDY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | DUNNICA O. LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 01/18/2000: OPERATION OF MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR RESULTING IN DEATH: 25 YEARS, WITH LAST 5 YEARS SUSPENDED PROBATION FOR 5 YEARS; FINE OF $10,000 AND RESTITUTION OF $15,000 AND $6,000 FUNERAL EXPENSES. |
| DISPOSITION: | AFFIRMED - 10/16/2001 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | ; denied 9/5/2002 |
| MANDATE ISSUED: | 11/6/2001 |

BEFORE McMILLIN, C.J., THOMAS, AND CHANDLER, JJ.

CHANDLER, J., FOR THE COURT:

¶1. A Pike County grand jury indicted the Appellant, James Murphy, under Miss. Code Ann.§ 63-11-30(4) (Rev. 1996), for the operation of a motor vehicle while intoxicated resulting in death. Following a trial, the jury found Murphy guilty of the crime charged. The circuit court sentenced Murphy to twenty-five years imprisonment in the custody and control of the Mississippi Department of Corrections, with five years suspended. Aggrieved, Jones cites the following issues on appeal.

**I. WHETHER THE TRIAL COURT ERRED IN DENYING JURY INSTRUCTION D-11 THAT SET FORTH MURPHY'S VERSION OF THE FACTS;**

**II. WHETHER THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE RESULTS OF BLOOD TESTS TAKEN AT SOUTHWEST MISSISSIPPI REGIONAL MEDICAL CENTER;**

**III. WHETHER MURPHY IS ENTITLED TO A NEW TRIAL UNDER THE AUTHORITY OF MCDUFF V. STATE;**

**IV. WHETHER THE TRIAL COURT ERRED IN DENYING JURY INSTRUCTION D-10 THAT SET FORTH A DEFINITION OF INTOXICATION; AND**

**V. WHETHER THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY THAT A FINDING OF SIMPLE NEGLIGENCE WOULD BE SUFFICIENT UNDER § 63-11-30.**

## STATEMENT OF THE FACTS

¶2. On the morning of October 24, 1998, James Murphy, while driving south on Highway 51, crossed over into the northbound lane and collided head-on with the vehicle driven by Mrs. Elsie H. Elliott. Mrs. Elliott suffered numerous injuries to her chest and abdominal regions which caused her death soon after the collision.

¶3. Murphy, an insulin-dependant diabetic, testified that while on his way home from the Desperado Club, a bar just off Highway 51, his blood sugar lowered, causing him to lose control of his car. However, Murphy also admitted that he consumed several beers while in the Desperado Club.

¶4. Two individuals, other than Murphy and Elliott, witnessed the accident. Ms. Beulah Hall testified that she had been driving behind Murphy just prior to the accident. She claimed that Murphy's vehicle began swerving off the road about a mile before the collision site. Ms. Hall then described how Murphy veered into the northbound lane and remained there, for a significant amount of time, until the collision. Charles Lewis, the second witness, had been driving behind Mrs. Elliott. Mr. Lewis corroborated Ms. Hall's account of the accident, noting that Murphy's vehicle had been traveling in the northbound lane for so long that he (Lewis) had time to stop his vehicle and view the accident.

¶5. Shortly after the accident, Simone Ott, an employee for the Mississippi Bureau of Narcotics, pulled over and attempted to render assistance. Ms. Ott helped Murphy out of his vehicle. She testified that "I could still smell, the alcohol, it was very strong coming from him . . . he was having to prop himself up against the vehicle, very unsteady." As Murphy exited the car Officer Chillis Crawford, Deputy Sheriff John Foreman, and an ambulance arrived.

¶6. Deputy Sheriff Foreman attempted to question Murphy about the accident. According to Foreman, Murphy would not speak to him. However, Foreman testified that when he walked up to Murphy he "could smell a strong, strong smell of alcohol coming from him." Additionally, Officer Crawford stated that Murphy's voice crackled during their conversation, that his eyes were red, and that he had a difficult time finding his license when asked to produce it. However, Murphy told Officer Crawford that he had not consumed any alcohol prior to the accident. No one arrested Murphy at this time.

¶7. Several doctors and paramedics also admitted smelling alcohol on Murphy. Murphy, contrary to his

statements made to Officer Crawford, admitted that he had consumed a few alcoholic drinks.

¶8. Prior to arriving at the hospital, a paramedic performed an Accu-Check, a test that measures an individual's blood sugar. Murphy's blood sugar measured 84. According to Dr. Barry Suber, a measurement of 84 is low-normal but not indicative of a loss of consciousness. Nonetheless, when Murphy arrived at the hospital, Dr. Suber, as a precautionary measure, started Murphy on an I.V. in order to prevent his blood sugar from getting any lower.

¶9. Dr. Suber, solely for the purposes of evaluation, ordered two blood samples to be taken from Murphy. Suber testified blood tests are necessary when treating diabetics due to their increased susceptibility to medical complications. One of the tests, performed forty minutes after Murphy arrived at the hospital, revealed a blood alcohol content of .13 percent. A few hours later, the Highway Patrol, for the first time, requested a blood sample for the purpose of testing Murphy's ethyl alcohol level. This time, approximately three and one-half hours following the accident, Murphy's blood alcohol content measured .07 percent.

## LAW AND ANALYSIS

### I. WAS MURPHY ENTITLED TO A JURY INSTRUCTION EXPLAINING HIS VERSION OF THE FACTS?

¶10. Murphy asserts that the trial court violated his right to have jury instruction D-11 submitted as a factual issue for the jury. Jury instruction D-11 reads:

> In order for you to find the Defendant guilty, you must find, beyond a reasonable doubt, that on October 24, 1998, he was driving a vehicle while under the influence of intoxicating liquor or had an alcohol concentration of ten one-hundredths percent (.10%) or more.

> You must also find that, because he was under the influence of intoxicating liquor or had an alcohol concentration of ten one-hundredths percent (.10%) or more, he operated his motor vehicle in a negligent manner and caused the death of Elsie H. Elliott.

> Therefore, if you find that the Defendant's negligent operation of his vehicle, i.e., while proceeding south on Highway 51 crossing into the northbound lane of traffic and driving there until the collision with Mrs. Elliott's vehicle, was caused by another condition, low blood sugar, then you must find the Defendant "Not Guilty."

¶11. The Mississippi Supreme Court has repeatedly held that "[i]n determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State,* 697 So.2d 777,782 (Miss. 1997) (quoting *Collins v. State*, 691 So.2d 918, 922 (Miss. 1997)). However, in a homicide case, the court commits reversible error when it fails to instruct the jury "as to [the defendant's] theories and grounds of defense, justification, or excuse supported by the evidence . . . ." *Hester v. State,* 602 So.2d 869, 872 (Miss. 1992). Moreover, the defendant's right is *absolute*, regardless of whether the evidence supporting the defense is slight and its factual basis improbable. *O'Bryant v. State,* 530 So.2d 129, 132 (Miss. 1988). But, the trial judge may refuse any instruction that "incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions." *Murphy v. State,* 566 So.2d 1201, 1207 (Miss. 1990). Here, the jury instruction D-11 is inaccurate and, therefore, the trial judge's refusal to place it before the jury is not reversible. *See Collins v.*

*State,* 691 So.2d 918, 925 (Miss. 1997) (holding that a trial court's refusal to give an instruction that misstates the law cannot form a basis for reversal).

¶12. Under Miss. Code Ann. § 63-11-30(1) it is against the law "for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor . . .[or] (c) has ten one-hundredths percent (.10%) or more for persons who are above the legal age to purchase alcoholic beverages under state law . . . ." Miss. Code Ann. § 63-11-30(1) (Supp. 2000). Furthermore, "[e]very person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a *negligent* manner causes the death of another . . . shall, upon conviction, be guilty of a felony . . . ." Miss. Code Ann. § 63-11-30(4) (Rev. 1996), *amended by* Miss. Code Ann. § 63-11-30(5) (Supp. 2000). Therefore, under the Felony DUI causing death statute, the State must prove that Murphy not only consumed alcohol prior to the accident, but that he performed a negligent act that caused the death of another. *Hedrick v. State,* 637 So.2d 834, 837-38 (Miss. 1994).

¶13. However, this Court has made it clear that § 63-11-30(4) "contains no requirement that the negligence has to be caused by the alcohol." *Ware v. State,* No. 1999-KA-01122-COA (¶52a) (Miss. Ct. App. 2001). In *Ware*, the accused proffered the following jury instruction:

> The Court instructs the jury that if you find the Defendant operated a motor vehicle with ten one-hundredths percent (.10%) or more by weight volume of alcohol in his blood based upon milligrams of alcohol per one hundred (100) cubic centimeters of blood as shown by chemical analysis of such person's breath, blood or urine but that such impairment did not cause the negligence that resulted in the deaths then you may find the Defendant guilty of DUI First Offense and not guilty of DUI Homicide.

*Id.* This Court affirmed the trial court's denial of the instruction, noting that § 63-11-30(4), unlike the culpable negligence manslaughter statute, does not require a causal nexus between the consumption of alcohol and the subsequent negligent act. *Id.*

¶14. Here, the second paragraph of instruction D-11 orders the jury to acquit if it cannot find that Murphy's consumption of alcohol caused him to veer into the northbound lane of Highway 51. In light of this Court's ruling in *Ware*, instruction D-11 is an obvious misstatement of the law. As such, Murphy cannot claim that the trial court's denial violates his fundamental right to have the jury instructed on his theory of the case. Moreover, the *Collins* decision prohibits this Court from reversing the trial court's refusal to grant a jury statement that incorrectly states the law.

### II. DID THE TRIAL COURT ERR WHEN IT ADMITTED INTO EVIDENCE RESULTS OF BLOOD TESTS TAKEN AT SOUTHWEST MISSISSIPPI REGIONAL MEDICAL CENTER?

¶15. Murphy requested the trial court to exclude the first set of blood tests taken by the Southwest Mississippi Regional Medical Center, arguing that the tests were not performed in strict accordance with the provisions of the Mississippi Implied Consent Statute. Murphy contends that the chemical analysis of the blood was performed by an individual who had not been certified by the State Crime Laboratory as required under Miss. Code Ann. § 63-11-19 (Supp. 2000). As this Court has noted, "the question of whether evidence may be admitted hinges in the first instance on whether the information is relevant to the matter being tried . . . ." *Acklin v. State,* 722 So.2d 1264, 1266 (¶7) (Miss. Ct. App. 1998).

¶16. In *Acklin*, the defendant argued that a blood test performed more than two hours after an automobile accident involving death should have been excluded since the test had not been administered according to the procedures set out in the Implied Consent Statute. *Id.* This Court rejected the defendant's argument, stating that the blood test was admissible because it demonstrated whether the defendant had alcohol in his bloodstream at the time of the accident. *Id.* In reaching this conclusion, this Court emphasized that "the Mississippi Supreme Court has made it quite clear that matters regarding the admissibility of evidence in a judicial proceeding are to be decided by judicial rather than legislative pronouncement." *Id.*

¶17. In the case at bar, Murphy contested the issue of intoxication during his opening statement and throughout the trial by drawing out testimony from witnesses concerning Murphy's sober, cooperative demeanor after the accident. At one point Murphy even told Officer Crawford that he had not been drinking the morning of the accident. Therefore, any evidence demonstrating Murphy's blood alcohol content following the accident would have been relevant. As such, the trial court did not err in admitting the results of the first blood alcohol test.

### III. IS MURPHY ENTITLED TO A NEW TRIAL UNDER THE AUTHORITY OF *MCDUFF V. STATE*?

¶18. Murphy claims that a recent decision from the Mississippi Supreme Court, *McDuff v. State,* 763 So.2d 850 (Miss. 2000), requires this Court to reverse and remand the case for a new trial. Murphy contends that under the reasoning in *McDuff*, the second blood test ordered by the police violated the Fourth Amendment since it was neither consensual nor supported by probable cause. Whether evidence should be admitted is within the trial judge's discretion and this Court will only reverse where an abuse of this discretion causes prejudice to the defendant. *McDuff,* 763 So.2d at 856 (¶19).

¶19. Two blood tests were performed. The first test, performed by Dr. Suber as part of a medical evaluation, revealed a .13% blood alcohol content. As discussed in the last section, the results of this test were admissible as evidence relevant to Murphy's level of intoxication at the time of the accident. The second blood test, ordered by law enforcement, showed that Murphy's blood alcohol content decreased nearly three and one-half hours following the accident. However, any error in the admission of the second blood test would not have prejudiced Murphy because the results of the first test were admissible and were related to the same issue, namely, Murphy's blood alcohol content following the accident.

### IV. DID THE TRIAL COURT ERR WHEN IT DENIED JURY INSTRUCTION D-10?

¶20. Murphy maintains that Instruction D-10 is necessary for the jury to be properly instructed on an essential element of Felony DUI causing the death of another. Instruction D-10 reads:

> You are instructed that the phrase "under the influence of intoxicating liquor" is defined as a condition in which intoxicating liquor has so far affected a driver's nervous system, brain, or muscles as to impair, to an appreciable degree, the driver's ability to operate a car.

¶21. The trial court rejected Instruction D-10, stating that "all that is required is over .10% alcohol." Under the statute, Murphy could have been convicted for either having .10% blood alcohol content or more, or merely being under the influence of intoxicating liquor. The Mississippi Supreme Court has held that Miss. Code Ann § 63-11-30 "merely sets forth numerous methods of committing the same crime." *Young v. City of Brookhaven,* 693 So.2d 1355, 1358 (Miss. 1997). Therefore, any error by the trial court would have

been harmless, because the evidence clearly demonstrated that Murphy had more than a .10% blood alcohol content.

¶22. The jury instructions, when read as a whole, are an accurate and fair pronouncement of the law. Murphy has failed to show how the exclusion of D-10 causes any prejudice. Moreover, Murphy failed to cite any legal authority in support of this argument pertaining to instruction D-10; therefore, his argument is procedurally barred. *See Ware,* No. 1999-KA-01122-COA at (¶46); *Pate v. State,* 419 So.2d 1324, 1326 (Miss. 1982).

### V. DID THE TRIAL COURT ERR WHEN IT INSTRUCTED THE JURY THAT A FINDING OF SIMPLE NEGLIGENCE WOULD BE SUFFICIENT UNDER § 63-11-30?

¶23. Murphy argues that the trial court is required, in the form of a jury instruction, to give specific examples of acts or omissions that would constitute negligent acts. Specifically, Murphy contends that Instruction D-6 both misstates the law as well as confuses the jury. Instruction D-6 instructed the jury that it could convict Murphy if it found that he failed to exercise reasonable care under the circumstances.

¶24. A conviction under the Felony DUI Causing Death statute "merely requires a negligent act, from which death or injury results." *Frambes v. State,* 751 So.2d 489, 492 (¶17) (Miss. Ct. App. 1999). Furthermore, simple negligence is enough to support a conviction under § 63-11-30(4) where all of the other elements are met. *Holloman v. State,* 656 So.2d 1134, 1140 (Miss. 1995). Simple negligence is a "failure to exercise reasonable care under the circumstances." *Turner v. State,* 726 So.2d 117, 131 (¶54) (Miss. 1998).

¶25. Murphy cites to several civil negligence cases for the proposition that it is reversible error for a trial judge to instruct a jury on negligence without giving it a guide to the acts or omissions that constitute negligence. *See Boyd Constr. Co. v. Bilbro,* 210 So.2d 637 (Miss. 1968); *Rawlings v. Royals,* 214 Miss. 335, 58 So.2d 820 (1952). However, each of the cited cases differs from the case at bar in that they do not provide a definition of negligence. Here, the trial court specifically instructed the jury that negligence is the failure to use reasonable care under the circumstances. The Mississippi Supreme Court has explicitly held that similar instructions setting out the reasonable care standard are sufficient in § 63-11-30(4) cases. *See Holland,* 656 So.2d at 1140.

### CONCLUSION

¶26. Under § 63-11-30(4), there is no requirement that the consumption of alcohol cause the negligent act that eventually leads to the death of another. As such, Murphy was not entitled to have jury instruction D-11 submitted as a factual issue. Further, Murphy vehemently contested the issue of his intoxication at the time of the collision; therefore, the first blood test, even though not taken in strict conformity with the Implied Consent Statute, was admissible as relevant evidence. Moreover, because the first test was admissible, Murphy could not show that the failure to exclude the second blood test caused him prejudice. Finally, Murphy's contention that he was entitled to jury instruction D-10 is procedurally barred due to his failure to cite any legal authority.

¶27. **THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF OPERATION OF A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR RESULTING IN DEATH AND SENTENCE OF TWENTY-FIVE**

YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED AND FIVE YEARS SUPERVISED PROBATION, FINE OF $10,000, RESTITUTION OF $15,000, AND $6,000 FOR FUNERAL EXPENSES IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.

McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.